You may proceed. Thank you, Your Honor. Good morning, Your Honors. I'm Paula Olson representing Weldon Mark Gilbert. It's always helpful to begin with the standard on appeal, and that is the de novo standard. Mr. Gilbert's judgment and sentence was entered on November 16, 2009. His judgment and sentence was only for his period of incarceration. An amended judgment and sentence was entered almost two years later on October 7, 2011. This was for over a million dollars of restitution for a total of about 21 victims. It was an extremely complicated process. If the parties were not able to agree on the amount of restitution, it was going to be protracted litigation in the district court. All parties at the time that the original judgment and sentence was entered in 2009 knew that that judgment was not a complete judgment, that it was only for part of Mr. Gilbert's sentence, which was the period of incarceration. Did that first judgment have language in it saying restitution would be granted, although not specifying amount? I believe so, Your Honor, but I'd have to go back and check to be absolutely certain. But it seems to me that it was. If it wasn't, it was certainly part of the record in terms of discussions in the district court. The district court was well aware of that. And I think the court can probably see through the discussion and the procedural history that this was a very complex and difficult case involving both district court in Tacoma and also in Seattle. So when Mr. Gilbert filed . . . So you, I guess, to begin with, a preliminary question, you agree that if the 2255 had to be filed within a year of that first judgment, it's late and cannot be filed? If the law requires that it to be filed within a year, then yes, it would be untimely. Of the first judgment entered? For the first judgment entered. That it had a line there for restitution to be filled in, but it wasn't filled in, everybody knowing that there would be further proceedings to determine that restitution amount. Yes, Your Honor. And I think that that distinguishes it from other situations that have come up and that you see in the case law. And that might be part of the court's concern about sort of opening a door to providing for another exception to widen the ability to get around that one-year deadline for filing a 2255. What do you do with the Ninth Circuit law that we're bound by with respect to 2255 not being available for restitution? That is an issue, Your Honor. And again, and I'm anticipating that when I say that this case is unique. And unfortunately, unique cases require some latitude. But what latitude do we have? I'm open to understanding that because we have a different setup than some circuits with respect to restitution in 2255. So you get your judgment, your sentence, then you have your restitution at least amount-wise hanging out there. If the law in the Ninth Circuit does not allow restitution, how do you then run that through your argument? The way I would run it through, Your Honor, is that the original judgment was not a final judgment. It is not final, and I would adopt to some extent the analogy of the Second Circuit and the newly, the new Gonzales case that the government brought to our attention. I understand your argument as to a Gonzales, but the Second Circuit doesn't have our approach. Our approach is, as Judge McEwen has suggested to you, you can't use a 2255 to deal with restitution. Now, what you're arguing to me is you can't use it for dealing with restitution, but nonetheless, the failure to file your 2255 within one year ought to be put off because the restitution hasn't been set. If restitution can't be a basis of the 2255, then why does the year start running only after restitution has been set? That's the question. That's the worry that it seems to me you forced me to go through. If I can't bring a 2255 to do anything about restitution, what does restitution have to do with the running of the year? Well, then, Your Honor, I think the court can fashion a rule where it's not just restitution. And in this case, in Mr. Gilbert's case, his 2255 was not about restitution. It was about a whole lot of other issues, which actually... Well, it wasn't about restitution. It was about other issues, which would lead us back to the idea it should have been filed within a year. They were full well-known. So then, Your Honor, what we do is if we don't like that approach, which I understand why the court might not, then I get to my second issue, which is the application of equitable tolling. Could I just ask another question on the restitution and the application of the AEDPA? Let's take something outside of restitution. And I appreciate your argument that this is perhaps a unique case, and that's why you'd like to analyze it differently. But let's take something else that the court didn't decide. For example, I sentence you to the mandatory minimum of 10 years. But there also are conditions of supervised release. And I'm going to withhold that decision until I have some more information in about some of your background and some of the issues that, for example, on a sex offender or something else. So 10 years, mandatory minimum. And it turns out that the judge then doesn't enter the supervised release for a year. Final judgment or no? So my question back to you, Your Honor, is did the court not enter the conditions of supervised release, or simply did not address supervised release at all? Because generally what happens in the district court is the court would say, you know, five years supervised release. And then the court might say, and conditions, you know, maybe here's a couple of conditions, but other conditions to be determined in the future. That, to me, would be a final judgment, because the period wasn't established. There will be restitution. I just don't know the amount of it now. There will be supervised release. But I can't actually decide right now how long I want to give you or the specific conditions of your supervised release. Is there a difference between those two? In a way, probably not in terms of the defendant and his sentence, because... I mean in terms of it... Right. And I understand that in terms of it being a final decision. It's an analogy, Your Honor, I hadn't thought of before. So it's new. It's a new concept. But I can see that in that situation, it would be very similar. I mean, I'd have to admit that they are very similar. Which is why, again, we leave debating the issue of the rule, the one-year rule, and go to the one exception, which is equitable tolling. Equitable tolling. And you've briefed that quite well. But you might want to save your remaining time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Michael Dionne on behalf of the United States. May it please the Court. There's two steps to the timeliness analysis in this case. The first question is, was the 2009 judgment a final judgment? And under Supreme Court case law, in particular, Corey and Dolan, I think there can be no serious dispute that it was a final judgment. Dolan, of course, addresses the specific issue of a judgment that does not set an amount of restitution. Dolan is admittedly dicta, but it's highly persuasive dicta that this Court has applied in the unpublished McGill decision. But the truth is, you don't even need Dolan to reach the conclusion that the initial judgment was a final judgment, because Berman and Corey, other cases that we cited, lead you to the where the defendant had been imprisoned for basically an indeterminate period, pending the receipt of a study from the Bureau of Prisons, and then the judge could revise the sentence based on that study. So there was a lot of uncertainty about probably the single biggest aspect of the judgment, the length of the sentence, in the Corey case. And nevertheless, the Supreme Court held that that was a final judgment. And in Corey, the Supreme Court set out its standard for what is a final judgment. It says a judgment that imposes discipline is a final judgment. And when you apply that standard to the initial judgment in this case, there's no question that it's a final judgment. It imposed discipline in the form of 300 months of imprisonment. It ordered lifetime supervision and laid out elaborate conditions of supervision. It imposed an extensive and detailed property forfeiture. So, under Corey, even before Dolan, it would have been a final judgment. And Dolan, really, at least in terms of the analysis the court walks through, is just the logical extension of Corey. So assuming that— The Second Circuit didn't seem too interested in Corey. Well, the Second Circuit is working from an entirely different framework, because the case law that recognizes the possibility that you might be able to challenge a restitution order in a 2255 action. And if you're looking at the 2255 limitations period from that point of view, and you're thinking that, yes, this defendant might be able to challenge the restitution order, then the analysis is completely different. Because then it makes sense that you would restart the running of the limitations period once the restitution order is entered. Because now that's something that the defendant— In other words, would you have to file an amended petition? In other words, even under the Second Circuit analysis, you're saying they don't really need to follow Corey because they permit a 2255 on restitution? Well, I think you could approach it a couple of different ways. The Second Circuit could—I don't know how they would play it out. They could say, no, you shouldn't file your petition at all until after the judgment is amended. Of course, nobody knew for sure in the Gonzales case that the restitution amount was going to be changed, because the court had imposed it. Then it goes up on review to the Second Circuit. The Second Circuit vacates that part of the judgment and remands back to the district court. So I don't think there's any way to know how it would play out under the Second Circuit in terms of exactly when you should file a 2255. But if we take your proposition then that under Corey, it's when the judgment imposes some kind of discipline, which in this case was incarceration, and given this potential split in the circuits over the 2255, and given the uncertainty that the judge left the defendant in here, why wouldn't equitable tolling kick in? Well, I guess my first question, Your Honor, is I don't think that the judge left the defendant in any uncertainty. The judge actually advised Mr. Gilbert at sentencing that his 2255 period had begun to run and that he was going to have a year to file his claim. So the judge clearly put Mr. Gilbert on notice. Let me rephrase it, because sometimes judges could possibly be wrong about how you calculate the one year, as we know from the hundreds of cases that we have that help us decide what is one year, which seems so obvious on the face. I meant where he left the defendant in limbo as to how much restitution. I mean, if it's $25, who cares? But if it's a million, you might care, as in this case. Well, there's two important points on the equitable tolling. The first is that Gilbert and his attorneys had the golden opportunity to develop their equitable tolling claim back at the trial court level in the 2255 proceeding. They knew that timeliness was going to be an issue, because we filed an answer arguing at length that the petition was untimely, citing Dolan and making all these other arguments. A few days after we filed that petition, there was basically a full day of depositions by Mr. Gilbert's counsel of Gilbert's trial attorneys, and they explored many issues. The transcripts go on for hundreds of pages. They did not ask one single question related to equitable tolling. They did not ask any questions about the advice those lawyers gave Mr. Gilbert about when he would need to file a section 2255 petition. Later, they filed a lengthy reply brief in support of the 2255 petition. This is now almost a month after the depositions. No mention of equitable tolling, no equitable tolling argument at all. So if you look at the Supreme Court decision in Lorillard, which says a party that had every opportunity to develop its claim in the trial court should not get a second bite at the apple on remand, following that reasoning, there's simply no reason to remand the case to let them develop an argument that they should have and could have developed before the trial court. Also, even if we don't buy that, if you don't buy that, then I think what you do is you look at the equitable tolling claim they've laid out, which is bad advice. His lawyers miscalculated the running of the limitations period, and they gave him bad advice. That's what Mr. Gilbert alleged in the declaration. The case law from this court is very clear. Bad advice about the running of the limitations period is garden variety negligence. It is not extraordinary circumstances, and it does not give rise to equitable tolling. This court's decision in Miranda dealt with a case where the lawyer sent a letter to the client saying, here's the date by which you need to file your 2255. That date was wrong. The lawyer miscalculated the deadline, and this court said that's garden variety negligence. The Supreme Court's decision in the Holland case said that if you're just talking about miscalculation of deadlines, it's garden variety negligence. The bar for extraordinary circumstances is extremely high. When you're talking about attorney misconduct, the cases where this court and others have found extraordinary circumstances are outrageous cases where the lawyers have completely abandoned their Mr. Gilbert hasn't alleged anything remotely like that in this case. He's merely alleging my lawyers made a mistake. They gave me bad advice, and that is not sufficient under this circuit's law. Unless the court has any other questions, thank you very much. I have a technical question. The Second Circuit case was filed after all the briefing was in here, right? Yes. Are there other Circuit opinions on this issue of when it's a final judgment that were filed after the briefing? This is the only one that we found, Your Honor. Thank you very much, Your Honors. Your Honors, I would submit to you that this case is an extraordinary, a case of extraordinary circumstances. If we were talking about only one instance of attorney negligence in terms of advising Mr. Gilbert as to what the deadline was for his 2255, I think that would be one thing, but it is not. The petition is rife with a whole long list of erroneous advice, resulting in Mr. Gilbert having almost 10 years' additional sentence added on that he did not anticipate and was told repeatedly by his defense counsel was not going to be happening to him. Counsel, on the equitable tolling issue, the cases I'm familiar with on extraordinary circumstance usually involve some kind of element like the lawyers abandoning the client or affirmatively doing things that would mislead the client or tell the client, not giving files to the client, things like that. Is there anything of that nature in this case? Not in the records, Your Honor, but I do know that there are some facts that would lend to that. Just briefly, there was a change in attorneys. You know the federal case went forward, was completed, and then the state court went forward. Change of attorneys there. Mr. Gilbert represented himself. Then he had another attorney. I am the last and the latest I came on pretty late in the game. I think we have to go by what's in the record. But exactly, Your Honor, and it's not a lot in the record. There's some references to it in Mr. Gilbert's declaration. I will say to the court that to a large extent the district court was aware of a lot of this going on. But it being absolutely in the record, not all of it was. Thank you. Thank you, Your Honors. Thank you both for your argument this morning. United States v. Gilbert is submitted.
judges: McKeown, Gould, Smith